UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-10196-01, 02-EFM |
| v. | ) | |
| | ) | |
| **JACOB ENGSTROM and** | ) | |
| **TESSA BOWLER,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**UNITED STATES' RESPONSE
TO DEFENDANTS' MOTION TO SUPPRESS**

COMES NOW the Government, by and through Michelle A. Jacobs, Special Assistant United States Attorney, and submits this Memorandum in Support of Government's Response to Defendants' Motion to Suppress (Doc. 34 and 37), and requests the Court deny the motions.

I. Facts

On February 22, 2012, deputies with the Sedgwick County Sheriff Department were conducting an investigation into a complaint about narcotic activity in the area of the motels at 47th and Broadway. Officers were looking for Jacob Engstrom, and had information that he was selling methamphetamine from one of the motels and he was dealing in stolen vehicles. Deputy Matthew Hall observed a white Toyota Solara and upon running the tag, discovered the vehicle was registered to Tessa Bowler. A record check showed an arrest for narcotic and marijuana sales in 2011, and a 2008 arrest for the

sale of marijuana.  The officer learned that Bowler was a witness in a case in which Engstrom was the suspect in an aggravated assault with a firearm.

Dep. Hall requested the guest register from Days Inn.  Tessa Bowler was registered as a guest, and earlier in the day had paid for the room through the next day. The room was paid for in cash.

Dep. Hall decided to watch the vehicle.  Shortly after 11:00 AM he observed a male walk to the Toyota Solara.  The male was wearing a black coat.  Dep. Hall then observed a female walk to the driver's side of the Toyota.  Dep. Hall received a phone call from the desk clerk at the Days Inn informing him that Tessa Bowler had just walked out of the motel from the south door.  Dep. Hall observed Bowler enter the driver's side of the vehicle.  The male removed his coat and placed it on the back seat before he entered the vehicle on the passenger side.

As the Toyota drove by the officers, Dep. Hall was able to observe that Bowler did not have her seat belt on.  Dep. Hall pulled behind the Toyota and was able to observe the seatbelt hanging down and not pulled across the driver.  Dep. Hall stopped the vehicle for a traffic infraction.  Dep. Hall opined that the vehicle took longer to stop than a normal traffic stop.

Dep. Hall made contact with the driver, identified by her Kansas driver's license as Tessa Bowler.  Dep. Edwards approached the passenger side of the vehicle.  Dep. Hall observed that Bowler appeared to be nervous.  She would look at the passenger, later identified as Jacob Engstrom, before she would answer questions.  She spoke very softly and did not maintain eye contact.

The passenger did not have identification, but identified himself. Engstrom appeared to be nervous and talkative, and his voice appeared to be strained. When asked, Bowler stated they were going "to get cleaned up," which Dep. Hall thought was unusual since they had just left a motel room. Engstrom then stated they were going to get clothes from his house.

The deputies returned to the patrol vehicle with Bowler's documentation. Deputies requested a canine start to their location prior to running the suspects for warrants. After receiving verification that neither individual was wanted and that Bowler's license was valid, Dep. Hall re-approached the vehicle. Dep. Hall requested Bowler step out of the vehicle to speak to him. Dep. Hall returned the documents to Ms. Bowler. Dep. Hall informed Bowler that he issued her a warning for not wearing her seatbelt. Dep. Hall told Bowler she was free to go and she turned and began to walk to the vehicle. Dep. Hall asked if Bowler would answer a few additional questions, and she agreed. Dep. Hall observed that she continued to appear nervous. Dep. Hall asked if she used anything illegal, and she stated she did not wish to answer the question. Dep. Hall asked if there was anything illegal in the vehicle, and after a pause, Bowler stated she did not think so. Dep. Hall asked for permission to search the vehicle, and Bowler denied consent. Dep. Hall informed Bowler that a canine was on the way to perform a canine sniff.

Dep. Edwards was speaking to Engstrom while Dep. Hall was returning Bowler's documents. Dep. Edwards explained to Engstrom how he could remedy his suspended

license situation.  Engstrom also answered questions regarding where he worked and lived.

While waiting for the canine, Dep. Hall and Bowler engaged in a conversation about her relationship with Engstrom.  She stated they were just friends, and she stated that she did not have knowledge of the aggravated assault, although she was listed as a witness.  She stated they were at the motel celebrating an anniversary, but also stated they were not boyfriend and girlfriend, which seemed unusual.

Dep. Cocking arrived with the drug dog.  Bowler and Engstrom were asked to stand at the back of Dep. Cocking's vehicle while the canine was deployed.  Dep. Cocking advised that the canine alerted.  Engstrom and Bowler were then detained while Dep. Hall and Dep. Cocking searched the vehicle.  A Sig Sauer handgun was discovered between the passenger seat and the center console.  Inside Bowler's purse officers discovered a digital scale, a glass pipe with methamphetamine residue, and a small bag containing methamphetamine.  In the coat in the back seat of the vehicle officers discovered approximately 80 grams of methamphetamine.  In the trunk of the vehicle officers located zip lock baggies and bullets.

Engstrom was searched and $1,136.00 in United States currency was found on his person.  Bowler consented to a search of the motel room.  No additional evidence was located in the motel room.

II.  Discussion

Defendants raise three arguments in the motions to suppress.  First, defendants argue there was no reasonable suspicion to stop the vehicle for a traffic violation.

Second, defendants assert there was no reasonable suspicion to detain following the traffic stop.  Finally, defendant Bowler moves for suppression of her statements, claiming she was subject to a custodial interrogation and the protections of *Miranda* applied.

    A.  <u>Reasonable Suspicion to Stop the Vehicle</u>

Both defendants argue that the officers did not have reasonable suspicion to stop the vehicle.  An officer has an objective justifiable basis for a traffic stop when the officer observes a traffic violation or has a reasonable suspicion that such a violation has occurred or is occurring.[1]  Reasonable suspicion requires a level of objective justification, but need not rule out the possibility of innocent conduct.[2]

In this case, Deputy Hall observed the driver of the vehicle, later identified as Tessa Bowler, driving on the roadway without her seatbelt fastened.  K.S.A. 8-2503 sets out that "[E]ach occupant of a passenger car manufactured with safety belts in compliance with federal motor vehicle safety standard no. 208, who is 18 years of age or older, shall have a safety belt properly fastened about such person's body at all times when the passenger car is in motion."  The officer observed the vehicle in motion and observed that the driver did not have a seatbelt fastened.  The officer observed the driver committing a traffic offense and had reasonable suspicion that a traffic violation was occurring.  The stop of the vehicle was proper.

---

[1] *United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003).
[2] *United States v. Vercher*, 358 F.3d 1257, 1261 and 63 (10th Cir. 2004).

2. <u>Reasonable Suspicion to Detain</u>

Defendant Bowler asserts that the deputies did not have reasonable suspicion to detain her until the dog arrived.  Defendant Engstrom similarly asserts that the continued detention following the completion of the traffic stop was not justified.

If a traffic stop is justified at its inception, the court must determine whether the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place.[3]  An officer may detain a driver beyond the scope of the traffic stop if the officer 1) develops an objectively reasonable and articulable suspicion that the driver is engaged in some illegal activity, or 2) the initial detention becomes a consensual encounter."[4]  Officers may "ask questions outside the scope of the traffic stop so long as the questions do not appreciably prolong the length of the stop."[5]

To determine whether an officer has a reasonable suspicion to detain beyond the scope of the traffic stop, the court should look to the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."[6]  Officers are allowed to "use their own experiences to make inferences from and deductions about the cumulative information available to them."[7]  Reasonable suspicion need not rise to the level of probable cause.[8]  A person's nervousness is a factor that may contribute marginally to a reasonable suspicion of illegal

---

[3] *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).
[4] *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004).
[5] *United States v. Valenzuela*, 494 F.3d 886, 890 (10th Cir. 2007).
[6] *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).
[7] *Id.*
[8] *Id.* at 274.

activity.[9]   The Tenth Circuit has recognized that nervousness is a common and natural reaction and therefore extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion.

Based on the factors known to the deputies following the completion of the traffic stop, the deputies had reasonable suspicion to detain the vehicle in order to perform a canine sniff of the vehicle.   The officers were aware of drug sales from the motels in the area, officers were actively looking for Jacob Engstrom, and knew that Tessa Bowler had prior arrests for narcotic and marijuana sales.   Officers knew that they had paid cash for the motel room – something frequently done by drug traffickers.   Upon speaking to Bowler she appeared very nervous, as did Engstrom.   Bowler's explanation as to where they were going did not make sense.   Looking at all these factors together, it is clear that the deputies had reasonable suspicion to detain the defendants while they waited for a drug dog to perform a canine sniff.

3.   Suppression of Bowler's Statements

Defendant argues that any statements she made at the scene should be suppressed because she was in custody and her *Miranda* rights had not been read to her.

"[T]wo requirements must be met before *Miranda* is applicable: the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'"[10] A person is "in custody" when he has been arrested or his freedom is curtailed to a degree

---

[9] *United States v. Santos*, 403 F.3d 1120, 1127 (10th Cir. 2005).
[10] *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993).

associated with a formal arrest.[11]   The relevant inquiry for determining whether an individual is "in custody" is whether a reasonable person in that position would "believe her freedom of action had been curtailed to a 'degree associated with formal arrest.'"[12]   A suspect can be in police "custody" for purposes of *Miranda* before he has been "arrested" in the Fourth Amendment sense.[13]   Similarly, *Miranda* warning may be required in highly intrusive "non-arrest" police encounters.[14]

Normally, questioning that occurs during a traffic stop requires no *Miranda* warnings.[15]   The court should consider the totality of the circumstances to determine whether the force employed by law enforcement created a custody situation.[16]   The court should consider the circumstances relating to the questioning process, the tone and manner of the questioning, and the separation of an individual from sources of moral support during questioning.[17]   The court should also consider whether circumstance show a police dominated atmosphere.[18]   A police dominated atmosphere may be shown by the degree of restraint placed upon the suspect, the threatening presence of numerous officers, whether the suspects documents were retained by law enforcement, and whether there is a threat of physical restraint.[19]

---

[11] *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam).
[12] *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993)(quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983).
[13] *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).
[14] *Perdue*, 8 F.3d at 1466.
[15] *United States v. Martinez*, 983 F.2d 968, 976  (10th Cir. 1992)(citing *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).
[16] *United States v. Torres-Guevara*, 147 F.3d 1261, 1266 (10th Cir. 1998).
[17] *United States v. Griffin*, 7 F.3d 1512, 1518 -19 (10th Cir. 1993).
[18] *Berkemer*, 468 U.S. at 439.
[19] *Griffin*, 7 F.3d at 1518-19.

The second factor necessary to trigger *Miranda* warnings is the suspect must be subject to a custodial interrogation.   Interrogation refers not only to express police questioning but also to police practices that the "police should know are reasonably likely to elicit an incriminating response from the suspect."[20]

Defendants were not under arrest and were not subject to custodial interrogation. The defendants were detained for a short period of time prior to the arrival of the drug dog.   Although the defendants were separated, Engstrom was allowed to remain in the vehicle, and Bowler was standing behind her car talking with Dep. Hall.   The questions posed to Bowler did not constitute direct interrogation.   The questions were related to the reason for the stop and the explanation of travels, as well as the relationship between the defendants.   These questions, presented while standing alongside a road way, do not employ police practices that rise to the level of interrogation.   As set out previously, at the time officers were talking to the defendants they had reasonable suspicion that the defendants were engaged in illegal activity.   The deputies did not use any force, handcuffs or weapons while talking to the defendants.   Dep. Hall spoke with Bowler in a calm and clear voice, never threatening or coercive.   The detention of the defendants did not rise to the level of intrusion required for *Miranda* warnings.

---

[20] *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

III.  Conclusion

For the reasons stated herein, the United States respectfully requests that this Court deny defendants' Motions to Suppress.

Respectfully submitted,

BARRY GRISSOM
United States Attorney

 s/ Michelle A. Jacobs
MICHELLE A. JACOBS, #21261
Special Assistant United States Attorney
1200 Epic Center, 301 N. Main
Wichita Kansas 67202
316-269-6481
Michelle.Jacobs@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Mr. Paul McCausland, attorney for defendant Jacob Engstrom, and Ms. Cyd Gilman, attorney for defendant Tessa Bowler.

s/ Michelle A. Jacobs
MICHELLE A. JACOBS
Special Assistant United States Attorney